THOMAS, Trustee, *v.* BROWNVILLE, FORT KEARNEY, AND PACIFIC RAILROAD COMPANY and Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Argued October 19th, 1883.—Decided December 10th, 1883.

*Contract—Equity—Fraud—Mortgage—Railroad.*

A railway company contracted with parties associated together as a construction company for the construction of a portion of its road, the payment to be made in mortgage bonds. Two of the directors were also parties in the construction contract. As part of the transaction the other parties in the construction contract agreed to assume subscriptions by all individual directors of the railroad company to the capital stock of that company (which was worthless), and relieve them from all liability under it : *Held,* that the contract could not be enforced in equity when resisted by stockholders in the corporation ; and that mortgage bonds issued under it to the construction company were voidable at election of the parties affected by the fraud, while in the hands of parties who took from the construction company not in the ordinary course of business, but under circumstances which threw doubt upon their being holders for value or without notice : also, *Held,* that, notwithstanding the invalidity of the contract, the holders of the bonds in a suit for the foreclosure of the mortgage were entitled to a decree for the payment of the sums actually expended for construction under the contract, and remaining unpaid, which were payable and paid in bonds declared void.

Bill in equity to foreclose a railroad mortgage. Decree of sale and sale made. Then stockholders petition to intervene on the ground of fraud, and by permission intervened, praying to set aside the sale, and to have the mortgage decreed invalid. The decree below set aside the sale and decreed the bonds to be invalid. Appeal.

*Mr. Wm. H. Ramsey,* for appellant, submitted the case on brief.

*Mr. J. H. Broady* for appellee.

Mr. Justice MILLER delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court for the District of Nebraska dismissing appellant's bill for a foreclosure of a railroad mortgage.

The mortgage was made by the Brownville, Fort Kearney and Pacific Railroad Company to secure the payment of bonds issued by said company to certain persons who had contracted to build its road, and to whom 610 of said bonds of $1,000 each had been delivered. There was a default in the payment of these bonds. After they were executed and delivered, the Brownville and Fort Kearney R. R. Co. became consolidated under the laws of Nebraska with the Midland Pacific R. R. Co., under the new name of the Nebraska Railway Company. In the bill of foreclosure both these companies, that is, the Brownville Company and the Nebraska Company, are made defendants, and an answer confessing plaintiff's right to relief being filed, the court rendered a decree of foreclosure, and apparently a sale was had.

But at this stage of the proceeding certain parties interested as stockholders of the original Brownville and Fort Kearney Company were permitted to make themselves defendants, and the first decree was vacated.

These parties set up by way of answer and cross bill that the contract for the construction of the road, on account of which the bonds were issued, was fraudulent and void, and so were the bonds issued under it, and they resisted the foreclosure of the mortgage on that account.

The fraud charged in this answer and cross bill is founded on two allegations:

1. It is alleged that two of the board of directors who took part in making the construction contract were interested with the other parties in the contract.

2. That the other contractors besides these two made an agreement at the same time that the construction contract was made, with twelve of the shareholders of the railroad company, that they would relieve them, as subscribers to the stock of said company, from the payment of any further assessments upon the stock which they had subscribed for, by paying out said stock and having same assigned to them; in all not to exceed $16,500 of the $41,000 of individual subscriptions to said company.

The names of the persons thus relieved by the construction

company included all the directors of the railroad company at the time the contract for construction was made. As the stock was worthless, and these parties were liable to be called on to pay up this $16,500, the effect upon the directors in making a construction contract with the men who relieved them of their liability, two of them being also parties in the construction contract, is readily seen.

These allegations are proved beyond question, and the circuit court held the contract void, and the bonds issued in fulfilment of it also void, and dismissed the bill.

We concur with the circuit judge that no such contract as this can be enforced in a court of equity where it is resisted and its immorality is brought to light.

But as this court said in the case of the *Twin Lick Co.* v. *Marbury,* 91 U. S. R. 587, such contracts are not absolutely void, but are voidable at the election of the parties affected by the fraud. It may often occur that, notwithstanding the vice of the transaction, namely, the directors or trustees, or a majority of them, being interested in opposition to the interest of those whom they represent, and in reality parties to both sides of the contract, that it may be one which those whose confidence is abused may prefer to ratify or submit to. It is, therefore, at the option of these latter to avoid it, and, until some act of theirs indicates such a purpose, it is not a nullity.

In the present case the stockholders of the corporation, whose officers accepted those benefits at the hands of the parties with whom they were, in the name of the corporation, making a contract for over a million of dollars, do denounce and repudiate that contract. The conduct of these directors is utterly indefensible. The case of *Wardell* v. *The Union Pacific Railroad Company,* 103 U. S. 651, is in precise analogy to this. See, also, same case in 4 Dillon, 330.

The original contract being such that the contractors can maintain no suit on it, the bonds which they received are affected with the same vice, and cannot be enforced unless they are negotiable instruments in the hands of innocent holders for value.

This principle is set up and relied on to reverse the decree,

on the ground that the bonds are in the hands of the Burlington and Missouri River Railroad Company. This company is no party to the suit, but it appears in evidence that, while it has possession of these bonds, it did not receive them by any purchase in the ordinary course of business. They came into its possession as part of a transaction in which it purchased the consolidated Nebraska company's railroad, and these bonds were probably taken as security against their being used to injure the title. It is also shown that, as further security in the same direction, the Burlington and Missouri Railroad Company yet retains $400,000 of the price of the road, which it agreed to pay. Under these circumstances we do not see that that company is in condition to avail itself of the doctrine of *bona fide* holders for value.

But we are asked to reverse the decree so far as to permit the trustee in this case to recover such a sum as the construction company actually earned in building the road. The matter was referred to a master, who, on this hypothesis, reported that the contractors had done work for the railroad company, which it had accepted, to the value of $205,947.66 beyond what they had received payment for, except as it was paid by these bonds. He also reported that this work was of that much advantage to the company, and its value or cost is estimated as on a *quantum meruit*, without regard to the prices fixed by the contract.

We are of opinion that appellant's view of this part of the transaction is sound.

The bonds and mortgage in the hands of the trustee were issued in payment for this work. To the extent of $205,947.66 the consideration is good, and no sound principle is seen on which they cannot to that extent be enforced. To this extent they do not rest on the original contract, but on work, labor, and material actually furnished to the company and received by it. These services and materials are not estimated by the prices named in the contract, but by their real value to the company.

In the analogous case of *Wardell* v. *The Union Pacific Railroad Company*, 4 Dillon, 339, the circuit court, after rejecting

ne fraudulent contract on the same grounds that we reject this one, said:

"By what rule shall we measure Mr. Wardell's rights? He has spent time and labor and money in discovering the mines and in placing them in condition to be profitably worked. . . . Apart from the contract, and if it had never existed, he is entitled to a fair and reasonable compensation for his labor and time and skill. The fraud gives the railroad company no right to these without just compensation."

This ruling was affirmed in this court on appeal in the same case. 103 U. S. 651; see also *Gardner* v. *Butler*, 3 Stewart (N. J.) Eq. 702.

There is another principle of equity jurisprudence which leads to the same conclusion.

The stockholders who have resisted complainant's claim were not parties to the original suit for foreclosure, nor were they either necessary or proper parties as the case then stood. The decree and sale were made in a suit where all the usual parties to such suit were agreed.

These stockholders had no legal right to interfere. It was only by permission of the court that they were allowed to come in and contest the validity of the mortgage. In doing this they became actors. They filed their cross bill.

In this condition of the case they are amenable to the rule that they who seek equity must do equity. It is just that they should pay a fair price for what they have received; that this mortgage, given for the construction of the road, though excessive by reason of the fraud in the contract, should stand for the reasonable value of what the company actually received in the way of construction. To permit these intervenors to defeat the mortgage on any other terms would be unjust, and would make the court the instrument of this injustice.

*The decree of the circuit court must, therefore, be reversed and the case remanded to that court, with directions for a decree in favor of the plaintiff for the sum of $205,947.66, with interest. If a sale becomes necessary, this sum must be paid*

out pro rata on the bonds secured by the mortgage, on their being produced and cancelled, or surrendered for cancellation, provided the road sells for so much.

MR. JUSTICE FIELD and MR. JUSTICE MATTHEWS took no part in the hearing or decision of this case.