GOETZINGER, Appellant, vs. DONAHUE and another, Respondents.

SAME, Respondent, vs. SAME, Appellants.

*January 29—February 16, 1909.*

*Corporations: Assignment of stock as collateral security: Right to vote: Transfer on books: When to be surrendered: Contract construed: Protection of pledgee's security against impairment: Right to be officer of corporation*

1. In an action involving the right to vote corporate stock assigned as collateral security for notes given for its purchase price, it is *held*, upon the evidence, that by the understanding and agreement of the parties the pledgor has the right to vote the stock, although it was not expressly so stipulated in their written contract.

[2. Whether, in general, the right to vote corporate stock assigned as collateral security is in the pledgor or the pledgee, not determined.]

3. Upon the sale of all the stock of a corporation notes were given for a part of the purchase price and most of the stock was assigned to the vendor as collateral security therefor. One share was issued to him and it was agreed that he should be a director, officer, and employee of the company, so as to be in a position to protect his securities. *Held*, that he was entitled to have the stock so pledged transferred to him on the books of the company, and that a new certificate should be issued to him showing the transfer and that it issued pursuant to the judgment of the court.

4. The assignment of the stock as collateral in such case being made, under the agreement, "to secure the payment of said notes, the same to be held by the [payee] until said notes shall be fully paid," no part of the pledged stock need be surrendered until the indebtedness evidenced by the notes is fully paid.

5. There being nothing in the agreement warranting an inference that the stock was pledged to secure anything other than the notes mentioned, the pledgee was not entitled to hold it to secure payment of damages by reason of a breach of his agreement in respect to his being retained as a director and officer of the company.

6. In an action for determination of the rights of all parties under such sale and agreement, the judgment should provide for the continuance of the vendor and pledgee of the stock as a director, officer, and employee of the company until the debt to him should be paid, upon the condition that he perform the duties of such positions; and his interest in the property should be protected against transfers or other acts of the corporation which might improperly impair his security.

APPEALS from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

In 1892 the Cream City Mirror Plate Company was organized with a capital stock of $3,000. In 1898 *John M. Goetzinger* had become the sole owner of the stock. The net assets of the corporation were then $54,000. On September 27, 1905, pursuant to prior negotiations with one *T. F. Donahue, Goetzinger* entered into a written agreement for the sale of the capital stock of the corporation to *Donahue.* The agreement provided that the stock should be increased to an amount equal to the net assets of the corporation; *Donahue* should pay *Goetzinger* $25,000 in cash and give *Goetzinger* five notes of equal amounts for the balance, to be paid in one, two, three, four, and five years, and to be secured by an assignment as collateral to *Goetzinger* of all of the stock of the corporation, save $10,000 worth; each party was to deposit $3,000 to insure the performance of the agreement; one share of stock was to be issued to *Goetzinger,* and the balance, issued to *Donahue,* was to be assigned, save $10,000 worth, to *Goetzinger* as collateral to secure the payment of the notes; *Donahue* was to be elected vice-president of the corporation, *Goetzinger* to be elected president, and to countersign all checks, to collect the outstanding and to pay all debts due, and to receive an annual salary of $1,800; and after the expiration of a year *Goetzinger* was to be employed to perform these duties until the notes were fully paid.

In January, 1906, *Donahue* and *Goetzinger* modified this agreement as follows: The capital stock was to be $50,000;

the balance of the assets of the corporation was to become a debt due to *Goetzinger* from the corporation; *Donahue* was to make a cash payment of $20,000, and for the $30,000 balance he was to make six notes of $5,000 each, payable one each year for six years, which notes were to be secured by an assignment of the stock according to the agreement; and *Goetzinger* was to become vice-president and treasurer, *Donahue* president, and one *F. C. Coggeshall* secretary.

The stock was increased to $50,000. One share was issued to *Goetzinger,* ten shares to *Coggeshall,* and 489 shares to *Donahue.* The officers were elected as agreed. *Donahue* paid *Goetzinger* $20,000 in cash, gave his notes for $30,000, and by written indorsement assigned the stock issued to him as security to *Goetzinger;* and the corporation gave its note for $4,000 to *Goetzinger.* The assignment of the stock was never recorded on the books of the corporation. An agreement was made between *Goetzinger* and the corporation whereby *Goetzinger* was to act as treasurer and financial manager of the corporation for the period of six years, and *Goetzinger* thereby agreed to perform all the services that might be required of him during that time. *Goetzinger* also received an assignment of all bills due the corporation and agreed to pay all its debts then due. A new certificate of stock was issued to *Donahue* in place of the one originally issued to him, which contained a mistake as to the number of shares. This certificate was duly assigned to *Goetzinger* as collateral.

At the annual meeting of the corporation in January, 1907, *Goetzinger* voted one share of stock, *Donahue* 439, *Coggeshall* ten shares, and one Schroeder, to whom *Donahue* had sold fifty shares of stock, voted the rest of the stock. *Donahue, Coggeshall,* and Schroeder were elected directors, and at a directors' meeting later in the day *Donahue* was elected president, *Coggeshall* secretary, Schroeder vice-president, and *Donahue* treasurer. A motion was adopted to dispense with the serv-

ices of *Goetzinger* as financial manager because of incompetency and neglect of duty, and the secretary was instructed to notify him.   Since this meeting *Goetzinger* has been excluded from participation in the management of the corporation.

*Goetzinger* instituted proceedings asking that the secretary be required to make a transfer on the books of the corporation of the stock held by him as security.   *Donahue* testified that *Goetzinger* had agreed that he should vote the stock owned by him, that *Goetzinger* understood that *Donahue* had the right to vote this stock, and that *Goetzinger* had declared that he feared that *Donahue* might vote him wholly out of participation in the management of the corporation.   It also appears that *Goetzinger* made no claim at the stockholders' meetings to any right to vote the stock assigned to him as collateral, but assumed and acquiesced in *Donahue's* right to vote it, nor did he take steps to secure a transfer of this stock on the books of the corporation before the stockholders' meetings so as to enable him to vote it.

The court found that there was no good reason for the corporation dispensing with *Goetzinger's* services; that *Donahue* was entitled to vote the stock held by him but deposited with *Goetzinger* as collateral; that *Goetzinger* was entitled to the issuance of a certificate of stock reciting that the stock shares were held by him as security; and that *Goetzinger* was entitled to hold the stock as security for any damages suffered by him because of the breach of contract in dispensing with his services as treasurer and financial manager.   Both parties appeal from the judgment entered on the findings of the court.

*Frank M. Hoyt,* for the plaintiff, contended, *inter alia,* that the legal title to the stock in question is in the plaintiff. Sec. 1751, Stats. (1898) ; Colebrooke, Collateral Securities (2d ed.) §§ 271, 272, 276 ; Id. (1st ed.) § 282.   The right to vote the stock is in appellant as the holder of the legal title. 3 Thomp. Corp. § 3872 ; Colebrooke, Collateral Securities (1st ed.) § 283, p. 371 ; *Comm. ex rel. Eberhardt v. Dalzell,* 152 Pa. St. 217, 221 ; *Vail v. Hamilton,* 85 N. Y. 453, 458 ;

*Sleeper v. Goodwin,* 67 Wis. 577, 592; *Heath v. Silverthorn L. M. & S. Co.* 39 Wis. 146, 158; *In re Argus P. Co.* 1 N. Dak. 435, 12 L. R. A. 782, note 1. Transfer on the books to plaintiff was expressly authorized by the written assignment indorsed on the back of the certificate. Sec. 1751, Stats. (1898), gives the right to such transfer and a new certificate; and the law, independent of the statutes, gives this right. Colebrooke, Collateral Securities (2d ed.) § 272; *Hubbell v. Drexel & Co.* 11 Fed. 115, 118; *Farmers' Nat. G. Bank v. Wilson,* 58 Cal. 600; *Skiff v. Stoddard,* 63 Conn. 198; *Jones v. P. & C. R. Co.* 32 N. H. 544; *Second Nat. Bank v. First Nat. Bank,* 8 N. Dak. 50. *Goetzinger* as pledgee is entitled to any dividends declared during the continuance of the pledge. 2 Cook, Stockholders, § 468, p. 827, and cases cited in note 3. The statute (sec. 1751, Stats. 1898) makes the transfer on the books of the corporation essential to the preservation of this right.

*Edgar L. Wood,* for the defendants, as to the rights of the parties with respect to the pledged stock, cited *Haring v. Hamilton,* 107 Wis. 112, 117; *Burgess v. Seligman,* 107 U. S. 20; *James M. Co. v. Hankwitz,* 137 Wis. 302, 118 N. W. 806; *Klinkert v. Fulton S. & M. Co.* 113 Wis. 493, 501; *Geilfuss v. Corrigan,* 95 Wis. 651, 665; *Morey v. Fish Bros. W. Co.* 108 Wis. 520, 527; Jones, Pledges, §§ 8, 441, 442, 720; *Spreckels v. Nevada Bank,* 113 Cal. 272, 33 L. R. A. 459; *State ex rel. Reed v. Smith,* 15 Oreg. 98; *Vowell v. Thompson,* 3 Cranch C. C. 428; *McHenry v. Jewett,* 26 Hun, 453; *Haskell v. Read,* 68 Neb. 107, 93 N. W. 998; *Hoppin v. Buffum,* 9 R. I. 513; *Ex parte Willcocks,* 7 Cow. 402; *Moore v. Marshalltown O. H. Co.* 81 Iowa, 45; *Haegele v. Western S. Mfg. Co.* 29 Mo. App. 486; *Clarke v. Cent. R. & B. Co.* 50 Fed. 338, 15 L. R. A. 683.

SIEBECKER, J.   The parties by stipulation enlarged the issues originally presented by the petition and answer so as to present the question of their legal and equitable rights arising

under the facts and circumstances of the transaction, whereby *Donahue* bought *Goetzinger's* interest in the corporation, the unpaid purchase price due *Goetzinger* was to be secured by a pledge of most of the shares of stock, and *Goetzinger*, by remaining in the positions of director, officer, and employee at a stated salary, had such a participation in the conduct of the corporate affairs as would enable him to properly protect his interests.

The principal controversy is whether *Donahue* or *Goetzinger* has the right to vote the stock assigned to *Goetzinger* as collateral. Both parties claim this right under the facts and circumstances of the case. In the light of the agreement of the parties, whether the right to vote stock in a corporation, transferred by indorsement by the owner of the certificate as collateral to secure performance of the pledgor's obligation, is vested in the pledgor or pledgee, need not be determined in this action. The court found that it was understood between them that *Donahue*, as owner of nearly all of the corporate interests, should have the general management of the corporate business and the right to vote the stock transferred as collateral to secure his indebtedness to *Goetzinger* after the reorganization of the corporate affairs in the manner agreed upon by them and the transfer of *Goetzinger's* interest to *Donahue* pursuant to such arrangement. No question of public policy or voting power secured from stock ownership being involved, it is not questioned but that the parties might determine by agreement who should have the right to vote such stock. Upon examination of the case we are led to the conclusion that the trial court is sustained in its finding that, by arrangement and understanding of the parties, *Donahue* has the right to vote the stock transferred to *Goetzinger* as collateral, though it is not expressly so stipulated in the written contract. The evidence of *Donahue* is clearly and definitely that it was understood and agreed between them that he was to vote the stock; that before the reorganization of the

corporate affairs and the sale of the stock to *Donahue, Goetz-inger* expressly recognized this right by acknowledging that *Donahue* could so vote the stock under his right as owner as to prevent *Goetzinger* from holding the office of director; that because *Goetzinger* recognized the right he demanded that the contract contain a stipulation that he should be elected a director for the ensuing six years; and that he acquiesced in *Donahue's* voting this stock at stockholders' meetings. *Goetzinger* testifies to the effect that the right of voting this stock was not expressly considered by them in their negotiations.

Considering these facts and circumstances in the light of the expressed purpose that *Donahue* was to buy out *Goetzinger's* interest in the corporation; have the general management of the corporate affairs; that *Goetzinger* was to be relieved of such responsibility and was to retain but one share of stock to enable him to hold a directorship and an office for the purpose of putting him in such a position that he could keep informed of the business affairs and protect his securities,—it is obvious that the trial court's conclusion that it was understood and agreed between the parties that *Donahue* was to vote the stock he transferred to *Goetzinger* as collateral to secure payment of his debt is justified by a clear and satisfactory showing in the evidence, and the court, therefore, properly adjudged that he was entitled to exercise this right, but that *Goetzinger* was entitled to have the stock so pledged as collateral transferred to him upon the books of the corporation by the issuance of a new certificate showing such transfer and that it so issued pursuant to the judgment of the court.

On defendants' appeal it is contended that the court erred in decreeing that *Goetzinger* was entitled to hold all of the stock pledged as security until the notes were fully paid. The agreement of September 27, 1905, contains a stipulation covering this question, which provides that the stock so pledged as collateral is "to secure the payment of said notes, the same to be held by the party of the first part until said notes shall

be fully paid." The evident intent of this agreement is that no portion of the pledged stock need be surrendered until the indebtedness evidenced by the notes is fully paid.

The defendants further claim that the judgment is errone-ous in providing that *Goetzinger* is entitled to hold the stock so pledged as collateral to secure payment to him of any damages he may be awarded by reason of any breach by *Donahue* of the agreements of September 27, 1905, and of January, 1906. We find nothing in the written agreement or in the negotiations warranting the inference that the parties agreed that the stock pledged should secure any demand for damages *Goetzinger* might have for breach of these contracts. All of the written stipulations and the negotiations show that the parties intended this transfer of the stock should secure only the payment of the notes. The terms of the contract clearly indicate an intent by the parties that the transfer should be limited to securing the payment of the unpaid purchase money, and it contains nothing which could be construed as securing payment of damages for breach of contract in not keeping *Goetzinger* in the employ of the corporation. The provision in the judgment declaring that *Goetzinger* is to hold the stock as security for the payment of damages resulting from any alleged breach of contract in this respect is erroneous and must be reversed.

These considerations dispose of the questions specifically presented in argument. It is, however, apparent from the proceedings in the course of the trial that the parties are de-sirous of having all questions embraced in the issues passed upon and determined. This, in our opinion, is not fully ac-complished by the judgment as entered. It is manifest that one of the controlling considerations which induced *Donahue* and *Goetzinger* to enter into the agreements they made was that *Goetzinger's* security was to be maintained by a provident administration of the corporate affairs and a diligent and faithful prosecution and conduct of its business. To accom-

plish and promote this result the continuance of *Goetzinger* as
a director, officer, and as an employee of the corporation was
of paramount importance to him. It is manifest from the
stipulations of the contract providing for these matters that
both parties so considered it. It is also important that the
corporate business be continued in such manner and under
such conditions as to properly preserve it as *Goetzinger's* se-
curity. These circumstances entitled *Goetzinger,* under his
contract with *Donahue,* to have it adjudged that the status and
contractual relation created by them should be maintained by
securing his reinstatement in the position of director and in
the office of treasurer and financial manager and by his reten-
tion in the employ of the corporation at the stipulated salary
until the debt evidenced by the notes should be paid, upon the
condition that he perform the duties of these respective offices
and positions. The judgment should also provide that *Goetz-
inger's* interest in the property should be protected against any
transfer, mortgage, or other incumbrance of the property, and
that the corporation be restricted in contracting liabilities to
such current loans as may be necessary for the proper conduct
of its business. We call attention to these as some of the
questions properly within the issues presented which should
be provided for in the final judgment in order to protect the
rights and interests of the parties.

The judgment entered must be reversed, and the cause re-
manded to the trial court to award judgment which shall de-
termine and adjudicate all matters necessarily embraced in a
final determination of the issues as presented by the parties.

*By the Court.*—Judgment reversed, and the cause re-
manded to the lower court with directions to enter judgment
as indicated in this opinion. Neither party will recover costs
in this court, and the plaintiff will pay the clerk's fees on ap-
peal.