SHAW v. BANKERS NATIONAL LIFE INSURANCE COMPANY.

[No. 8,896. Filed March 29, 1916.]

1. CORPORATIONS.—*Insurance.*—*Board of Managers.*—*Exercise of Power.*—*Contract.*—Where the by-laws of an insurance company provided for a board of managers consisting of three members to be appointed by the directors, that the powers conferred should be exercised by them jointly, and that the majority voice of the managers should prevail in all things, the provisions of a contract executed pursuant thereto between the company and the persons designated as managers must be deemed to have contemplated joint action after consultation, and as conferring authority to act only as a board, so that the withdrawal of a majority of the members destroyed the existence of the board and the remaining member was unable to exercise its powers. pp. 354, 355.

2. CORPORATIONS.—*Insurance.*—*Articles.*—*Unnecessary Provisions.*—A provision in the articles of incorporation of an insurance company organized under §4739 *et seq.* Burns 1914, Acts 1897 p. 318, creating a board of general managers consisting of three members to be appointed by the directors, was not required by the statute, and could have no greater force or effect than as a by-law. p. 355.

3. CORPORATIONS.—*Insurance.*—*Board of Managers.*—*Contract.*—*Termination.*—Where a contract between a life insurance company and three persons designated as a board of managers was entered into by the company because each member of such board was understood to be an expert in a field pertaining to life insurance distinct from that in which the others were understood to be efficient, so that a combination of such skill and knowledge would thereby be procured, such contract was terminated by the retirement of two of such persons, since it was impossible for the company to thereafter receive the benefit of the skill and knowledge contemplated. p. 356.

4. CORPORATIONS.—*Insurance.*—*Contract with Managers.*—*Rescission for Fraud.*—False and fraudulent representations of three of the organizers of an insurance company, who were also members of its board of directors, that they had procured the requisite applications to entitle the company to be incorporated, being one of the potent factors in inducing the board of directors to execute a contract naming them as the board of managers justified the directors in rescinding the contract on ascertaining the facts. p. 357.

5. CORPORATIONS. — *Directors.*—*Delegating Powers.* — Although a board of directors may for the term of its existence delegate its powers involving discretion to a board of managers, it can not do so beyond recall for a period extending long beyond such term. p. 357.

From Marion Circuit Court (21,885); *Charles Remster*, Judge.

Action by the Bankers National Life Insurance Company against Guy G. Shaw. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*George A. Cunningham* and *Daniel H. Ortmeyer*, for appellant.

*Frederick E. Matson, Edward E. Gates, James A. Ross*, and *Robert D. McCord*, for appellee.

CALDWELL, J.—This appeal is prosecuted from a decree enjoining appellant from exercising any of the rights and privileges and from performing any of the duties in terms created in him, together with two associates, by a certain contract, executed by appellee to them under date of April 11, 1912, and also from doing certain acts to the prejudice of appellee, its officers and agents, in the management of the affairs of the company. The sole error assigned is predicated on the overruling of appellant's motion for a new trial. To determine this appeal, it is necessary to consider only the sufficiency of the evidence to sustain the decision. The somewhat voluminous evidence is in substance as follows: Prior to April, 1912, appellant and his two associates took steps looking to the organization of a mutual life insurance company on the assessment plan under the provisions of the act of 1897. Acts 1897 p. 318, §4739 *et seq.* Burns 1914. In carrying out their purpose, they interested nine other gentlemen in the enterprise, to wit, George Lemaux, W. P. Edmondson, George M. Weber, William A. Walker, Edgar L. Apperson, Riley C. Adams, W. F. Hughes, Eben H. Wolcott, and David B. Hill. As a result, appellee was organized as a mutual life insurance company. Under date of April 2, the twelve gentlemen, as prospective incorporators,

signed and acknowledged articles of incorporation. The articles contained the specifications required by said act, only two of which need be specifically mentioned: First, a specification that the incorporators other than Hughes should constitute the board of directors, eleven in number, until the first annual meeting. Second, as required by said act, the articles contained a certification to the effect that the prospective incorporators had procured *bona fide* applications for insurance from 200 persons, amounting to $200,000, and that each applicant had been recommended by a reliable physician, and that each had paid to the incorporators $2 on each $1,000 of insurance applied for by him. Reference is made also to the certificate of a solvent bank to the effect that such advance funds had been deposited with it to be turned over to the treasurer of the company when organized. The articles contained also a specification not required by the statute that the board of directors therein named "shall have the power to create and may temporarily delegate its powers to an executive committee of not less than three nor more than seven members, and shall have power to create and appoint a board of general managers consisting of three members, and shall make such contract with and grant them such powers and remuneration and require such duties as may be agreed upon and set out in the contract of employment".

April 9, being before the incorporation of the company had been perfected by filing the articles, etc., the other nine incorporators entered into a contract in writing with appellant and his two associates, reciting therein that the latter three had promoted the company, and to that end had expended time and performed labor, and providing among other things that in consideration of

services performed by them in securing the number and amount of applications for insurance necessary to the organization of the company, and in making medical examinations of the applicants, and further, in consideration of the benefits likely to accrue to the company from the continued service and technical knowledge of the subject and system of life insurance possessed by appellant and his two associates, the nine former, eight of whom were named as directors by the articles of incorporation, agreed that at the first meeting of the board of directors after the incorporation of the company had been perfected, they would direct the execution of a contract in behalf of the company, by which appellant and his two associates should be employed as general managers of the company on terms specified by the contract of employment, a copy of which was annexed to and referred to by such contract of April 9.

The incorporation of the company was perfected April 11. Thereafter, but on the same day, the board of directors met and organized by the election of appellant and his associates with others as the executive officers. Thereupon, by the unanimous vote of the board of directors, except appellant and his two associates, the contract, a draft of which was annexed to the contract of April 9, was executed, it being signed on behalf of the company by certain officers designated to that end, and by the signatures of appellant and his two associates being appended thereto. Appellee is named as first party, and appellant and his two associates as second parties to the contract. It provides in substance that the second parties are thereby appointed general managers of the company, and that as such they shall have the general management of all the affairs of the company with full power to execute the

same; that they shall appoint all agents and
employes which, under the plan of organization,
were to be appointed, with power of dismissal for
cause. The third specification is as follows: "The
powers in this clause delegated to the said parties
of the second part are that said second parties shall
fix all premium rates, approve all policy forms, fix
the minimum and maximum of all ages to be insured,
and the classes of risks to be accepted before the
same be effective or operative by the said com-
pany." There are other provisions that it shall be
the duty of the second parties to obtain in their
names jointly the proxies of all the policy holders
as members of the company, or as many of them as
possible, and to vote such proxies at all meetings.
It is provided that appellant shall be paid for his
services as a member of the board of managers
$1,800 per year, payable annually, and also three
per cent of the gross annual premium or assessment
income. The compensation of one of appellant's
associates under the contract is fixed as the same in
amount and per cent as appellant's. The com-
pensation of appellant's other associate as a mem-
ber of the board of managers is fixed at one and one-
fourth per cent of such gross income, but he is named
also as general counsel to serve through the life
of the contract, with a provision that for his services
in such capacity, he shall be paid reasonable com-
pensation to be fixed by the board of managers,
with the stipulation that his total compensation in
any year as a member of such board and as general
counsel shall not exceed the sum paid appellant
for the same time. It is provided also that each
member of such board shall be paid his reasonable
traveling expenses and his expenses incurred in
entertaining visiting agents and members of the
company, and also that he shall be paid the usual

commission on all insurance written by him. There is a provision that it shall be the duty of the members of such board to act harmoniously and avoid disagreements and friction, and that a majority voice of the managers shall prevail on all things and at all times. The by-law on the subject of the appointing of the board of managers is as follows: "The board of directors shall create and appoint a board of general managers consisting of three members, and shall make a contract for a period of years with the members of such board of general managers and grant to them such powers and remuneration and require such duties to be performed as may be agreed upon and set out in the contract of employment so made."

There was evidence that soon after the execution of the contract creating the board of managers, strife and contention arose among appellant and his associates as members of such board respecting the affairs of the company. As a consequence, one of such associates by a writing dated July 23, 1912, abrogated such contract and released appellee from all liability thereunder, and retired from the board. September 12, 1912, the other associate by a like writing took a similar action. Thus appellant remained as the sole member of such board. Shortly thereafter the board of directors deeming the contract with appellant and his associates terminated by the withdrawal of the latter, negotiated with the former respecting a new contract. Appellant, however, insisted that the contract was in force as to him, and that he was authorized to exercise all the rights and powers thereby granted to the board of managers.

Appellant and his associates as promoters had undertaken the work of procuring the number of applications for insurance required in order that

the company might be incorporated.    There was abundant evidence that both before and after the execution of the contract creating the board of managers, they frequently represented to the directors and stockholders that they had procured such applications, and that the required advance payments had been made thereon.    At one of the preliminary meetings of the company, they exhibited a bundle of papers with the statement that it contained two hundred good-faith applications, representing $200,000 of insurance applied for.    The bundle in fact did contain that number of papers in the form of applications, and apparently properly signed, but it was conclusively established at the trial that at least 190 of them did not constitute *bona fide* applications for insurance, and there was substantial evidence that the signatures thereto represented fictitious and unascertained persons. The incorporators, however, signed applications for insurance, and made payments thereon in advance in amounts sufficient so that when deposited, the certificate of a bank as above referred to was procured.    In short it was practically conceded at the trial that that step in the organization of the company relating to the procuring of applications for insurance was not in fact taken; that an appearance indicating that it had been taken was created for the purpose of procuring from the State officials designated by the statute the certificates necessary to incorporation, and the transaction of business. Appellant at the trial urged in extenuation that all the incorporators and directors had full knowledge of the deception, and that they at least passively participated therein.    There was, however, a lot of substantial evidence that the directors and incorporators were deceived by appellant and his associates, and that they in good faith believed that such

fictitious applications were genuine and that advance payments had been properly made thereon, and that shortly before November 12, 1912, they first ascertained the real facts. At about the same time the attorney-general of the State submitted to the company an opinion in writing to the effect that the contract creating the board of managers in its substantial features was void. Appellee at this time was continuing its negotiations with appellant, to the end that some new and satisfactory arrangement might be made respecting the management of the company, it being appellee's contention that the contract made with appellant and his associates conferred authority on them jointly as a board, and that the abrogation of the contract by the latter and their retiring from the board of necessity terminated the contract. In view of the entire situation thus presented, the board of directors on November 12, having acquired knowledge as aforesaid, and having caused payment in full to be made to appellant to that date for his services under the contract, by a lengthy resolution, reciting the facts, a copy of which was served on appellant, declared the contract to be null and void and terminated, and thereupon selected a temporary general manager to serve until proper steps might be taken pursuant to the by-laws. Appellant thereupon, insisting that it was within his exclusive province to manage the affairs of the company by virtue of said contract, took possession of all the books, papers and records of the company, locked the office and excluded therefrom appellee's officers, directors and agents, and did other acts indicating a purpose to control and manage the prudential affairs of the company within the specifications of said contract to the exclusion of all other persons.

By the decree appealed from, appellant in effect is enjoined from interfering with the board of directors in managing the affairs of the company; from interfering with appellee's employes in performing their duties under the direction of the board of directors; from locking appellee's office against its directors, officers and employes; from acting in any other capacity than as director and first vice president; from removing appellee's papers, documents, etc., and from refusing to deliver them to appellee's proper officers; and from performing the duties of general manager as specified by said contract. The decree operated to restrain appellant from doing certain acts which by the strict terms of the contract, if valid, he and his associates were authorized to do, and also from doing or continuing certain other specific acts apparently provoked by the action of the board of directors in declaring the contract terminated. It follows that, if the contract was valid and yet in force against appellee and in favor of appellant, and if the act of the former in declaring it null and at an end was unwarranted, there is a lack of equity in appellee's cause, and the decree can not be upheld.

The first question that presents itself is whether the contract clothed appellant and his associates with joint powers only or whether such powers 1. were to be exercised by them severally; and if they were to be exercised jointly only, whether the abrogation of the contract by appellant's associates, and their retiring from the board of managers terminated the contract as to appellant. Appellant's position is that all the powers prescribed by the contract were delegated to each member of the board or to all of them severally, and the other members having withdrawn that he alone was clothed with such powers to the exclusion

of all other persons or bodies. As we have indicated, there is a specification in the articles that "a board of general managers consisting of three members" shall be appointed. As the statute under which appellee was organized does not require that the articles contain such a specification, it can have no greater force or effect than as a by-law. *State, ex rel.* v. *Anderson* (1903), 31 Ind. App. 34, 67 N. E. 207. Nevertheless, such provision may be considered in determining the nature of the body created pursuant thereto. The by-laws also, as we have said, provide that such a board shall be created. The contract by the terms of which appellant and his associates are named as the members of such board, provides specifically that certain designated powers shall be exercised by them jointly, and also that the "majority voice of said managers shall prevail in all things and at all times." This language necessarily excludes individual action, and contemplates joint action after consultation. It follows that in the exercise of the prudential powers conferred on appellant and his associates, they were authorized to act only as a board, but might act by a majority vote as indicated in the contract. 10 Cyc 773, 774; *McNeil* v. *Boston Chamber, etc.* (1891), 154 Mass. 277, 28 N. E. 245, 13 L. R. A. 559; 7 R. C. L. 439; *Wright* v. *Floyd* (1909), 43 Ind. App. 546, 86 N. E. 971. Each member of the board of managers was an entity distinct from the organized body. Upon the former no power was conferred. All the authority contemplated by the contract was vested in the latter. The withdrawal of a majority of the members of such board destroyed its existence. There was no provision by which it might be restored or reconstructed. It could not, therefore, longer dis-

charge the specified duties. Under such circumstances, appellant ascribed to himself as an individual all the powers conferred on the board and insisted that he was authorized to exercise them. It would, therefore, seem apparent that the action of the board of directors in declaring the contract terminated was in fact but a recognition of its status, as changing circumstances had already established it, and that the action of the board of directors was warranted and that the court properly enjoined appellant not only from committing the extreme and violent acts indicated by the decree, but also from exercising powers conferred only on the board of managers. There is another

3. view: The preliminary writing of April 9, shows on its face that the incorporators in pledging themselves to procure the execution of the contract designating the members of the board of managers and prescribing the powers and duties of such board were induced very materially thereto by the fact that appellant and his associates were understood to possess marked technical knowledge of the subject of life insurance, whereby it was deemed that their services would be very advantageous to the company. There was other evidence that each of these gentlemen was an expert in a field pertaining to life insurance distinct from that in which the others were understood to be efficient, and that the board of directors contracted to procure the combination of knowledge and skill presumed to be possessed by the three. The retiring of the two members of the board rendered it impossible therefore for the company to receive the benefit of the skill and expert knowledge contemplated by the contract, and in the absence of which there is nothing to indicate that there would have been a contract. The retiring of the two members therefore

terminated the contract.   See *Miller* v. *Ready*
(1915), 59 Ind. App. 195, 108 N. E. 605, and cases;
*Campbell* v. *Faxon* (1906), 73 Kan. 675, 85 Pac.
760, 5 L. R. A. (N. S.) 1002, note.

It is apparent also from our statement of the facts
that the representations made by appellant and his
associates that they had procured appli-
4.   cations for insurance as we have indicated,
was a very potent factor in inducing the
board of directors to execute the contract naming
the members of the board of managers, and pre-
scribing their powers.   Such fact contributed mate-
rially to the impression that they did possess techni-
cal skill and knowledge respecting life insurance,
and a peculiar ability in dealing with it.   As we
have indicated, there was substantial evidence that
such representations were false and justified an
inference that they were fraudulently made.   Appel-
lant and his associates sustained such a relation to
the company, being directors and executive officers,
as demanded from them openness of purpose and
action and the utmost good faith.   For this reason
the board of directors was justified in rescinding the
contract on ascertaining the facts.   It follows with-
out further elaboration that the decision is sus-
tained by the evidence.

We do not deem it wise to terminate our discus-
sion without a word respecting the fundamental
nature of the contract under consideration.
5.   The act under which appellee is organized
requires that its affairs be managed by a
board of directors.   In addition to the general pro-
vision to that effect, it is prescribed that certain
specifically designated powers shall be exercised by
such board.   §§4740, 4741 Burns 1914, Acts 1897 p.
318.   The contract under consideration not only
delegates to the board of managers a very consid-

erable and important part of such powers, including those so specifically designated, but also so delegates them for a period of thirty years. These powers are of a nature calling for the exercise of judgment and discretion. The members of the board of directors that executed the contract were named to serve until the next annual meeting or less than one year. It follows that that board in terms delegated powers to be exercised for years beyond the short term during which such powers were committed to it. The effect of the contract, if valid, was to the extent that powers were thereby delegated to deprive the stockholders at the next annual meeting and thereafter during the life of the contract, of the right to call to the service of the company the judgment and discretion and practical wisdom of such of their number as they might name as directors. On the question of the authority of the board of directors to delegate its powers, we quote the following from 2 Thompson, Corporations (2d ed.) §1200: "Whatever may have been the strictness of the rules formerly on the question of the delegation of powers by a board of directors, it is apparent that the doctrine has been very liberally extended in recent corporation law. While some restrictions still necessarily exist, yet it is now granted that boards of directors or trustees may ordinarily delegate to a less number their general powers. What might be called the modern rule is stated in a valuable work on corporations, thus: [Clark & Marshall, Corporations §732.] 'Where the charter, general law, or a by-law vests the general superintendence and control and active management of all the concerns of a corporation in a board of directors or trustees, as is generally the case in business corporations, the board constitutes to all purposes of dealing with others, the corporation, and do not, at

least in the general management of the corporate business, exercise a delegated authority in the sense of the rule prohibiting delegation of authority to an agent; and it has been held, therefore, that they have authority, acting as and for the corporation, to delegate to subordinate officers or agents, or to a committee of their own number, the power to perform any act, in the course of the business of the corporation, which they themselves can legally perform, although the performance of the act may involve the exercise of the highest judgment and discretion' ". Also the following from 2 Cook, Corporations (4th ed.) §715: " There formerly was some doubt as to whether the powers of a board of directors might be delegated to an executive committee. The right of the board of directors to delegate to agents the transaction of the ordinary and routine business of the corporation is unquestioned, and indeed is absolutely necessary. But in matters involving discretion there are decisions to the effect that the directors cannot delegate that discretion. The clear weight of authority, however, holds that the powers of a board of directors may be delegated to an executive committee of that board, and the acts and contracts of such a committee may be made binding on the corporation."

Assuming, without deciding, that a board of directors may for the term of its own existence delegate powers as comprehensive as in the contract here, we know of no decision or authority that it may be done beyond recall to be effective for such an extended period. See *Wainwright* v. *P. H. & F. M. Roots Co.* (1912), 176 Ind. 682, 687, 97 N. E. 8. The judgment is affirmed.

NOTE.—Reported in 112 N. E. 16. As to the trustee character assumed by members of board of managers, see 139 Am. St. 602. See, also, under (1) 10 Cyc 773; (4) 10 Cyc 275.