### SHERMAN & ELLIS, Inc., v. INDIANA MUTUAL CASUALTY CO. et al.

#### No. 4186.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1930.

Rehearing Denied Aug. 19, 1930.

John R. Cochran, of Chicago, Ill., for appellant.

William H. Thompson and Charles O. Roemler, both of Indianapolis, Ind., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVANS, Circuit Judge.

This appeal is from a decree allowing appellant but a small part of its asserted claim against the Indiana Mutual Casualty Company, here called the casualty company. The rejected items are predicated upon the latter company's breach of its contract as well as for moneys advanced by appellant in carrying out said contract.

Originally appellant sought specific performance of this contract as well as an accounting. While the suit was pending, however, a receiver was appointed for the casualty company upon appellant's motion and upon the casualty company's consent, and thereafter the relief sought was limited to an accounting and the recovery of a money decree.

Several issues were referred to a master, who found for appellant as to certain items aggregating $11,224.94 and against it on other items. His findings were adopted by the court, and a decree was entered accordingly.

The casualty company, an Indiana corporation, was organized to take over the business of an unincorporated association engaged largely in writing policies covering risks created by the Indiana Workmen's Compensation Law. It early ratified the agreement here involved with appellant (an Illinois corporation that transacted a large business in casualty insurance), by which agreement the management of the casualty company was conferred upon appellant for a period of twenty years. The compensation for the services thus rendered was agreed upon and specifically stated in the agreement. The casualty company terminated its contract after some difficulties had arisen between appellant and the Indiana state department and after an unsuccessful attempt had been made by the state to have a receiver appointed for the casualty company. This suit to enforce specific performance of the contract and to recover damages followed.

The agreement between appellant and the casualty company provided:

"That for and during a period of twenty years from the date hereof, it will supply without compensation other than the payments specified in Article II, Paragraph First, hereof, the underwriting *and executive management* for the Mutual Company in the person of its President, Frank H. Ellis, or such other of its officers as it may from time to time designate, who shall be competent to perform the services of chief executive head and underwriting manager of the Mutual Company, to the end that the same compe-

tent management which the Indiana Manufacturers Reciprocal Association has enjoyed in the past may continue uninterrupted for the benefit of the Mutual Company policyholders.

"* * * That for and during said twenty-year period it will cause to be elected as its underwriting manager, who shall have general supervision and charge of the underwriting affairs of the corporation, such person who shall be an officer of the Management Company as the Management Company shall from time to time by a writing signed by not less than a majority of its Board of Directors designate, provided that if any court of final jurisdiction shall hold that the management shall prove grossly incompetent or inefficient, then this contract shall become null and void."

"The Mutual Company covenants and agrees:

"First: That for and during the said twenty year period it shall set aside for and pay to the Management Company as and when collected by it, ten (10) per cent of the net earned premium collected from all policyholders during said period. This covenant is based upon the assurance of the Management Company that the total Management expense, inclusive of said ten per cent payments to it, but less claim expense as the same has been heretofore calculated under the said power of attorney attached hereto as 'Exhibit A' and less expense of directors shall not exceed thirty (30) per cent of the said net premiums so collected and if said Management expense during any yearly accounting period shall exceed such latter percentage, the amounts payable to the Management Company for any such period shall be abated by the amount of such excess management cost."

Appellees argue that this agreement is void as against public policy, and therefore its breach created no liability on the part of appellees.

The statutes applicable are sections 9091–9114, Burns' 1926 Statutes.

The by-laws of the casualty company among other things read:

"All officers shall be elected at the annual meeting of the Board of Directors upon the affirmative vote of a majority of the total number of directors.

"The Board of Directors shall have the general control and management of the business of the corporation. Subject to the limitations expressed in Article IX, they shall have the power to make and amend by-laws and make all regulations and take all action

necessary or desirable for the proper transaction and conduct of the business and affairs of the corporation. They may appoint an executive committee composed of three or more members of the Board of Directors and delegate to such Committee such of their own powers as they may from time to time deem expedient or proper.

"These by-laws may be amended by the Board of Directors at any regular or special meeting by a two-thirds vote of the entire number of directors, but no such amendment shall be effective to impair the rights of any third parties under a theretofore existing contract entered into with the corporation and which was authorized by the provisions of the by-laws as in force at the time of the execution of such contract."

The line of demarcation between cases which recognize the right of officers of a corporation to delegate certain managerial duties to a stranger and cases which deny such authority is not entirely clear or easy to follow. That corporations may, at least for a limited period, delegate to a stranger certain duties usually performed by the officers, is clear. 2 Thompson on Corporations (2d Ed. § 1200, 3d Ed. § 1300); Jones v. Williams, 139 Mo. 1, 39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 Am. St. Rep. 436; Puller v. Royal Casualty Co., 271 Mo. 369, 196 S. W. 755; Lorillard v. Clyde, 86 N. Y. 384; Faulds v. Yates, 57 Ill. 416, 11 Am. Rep. 24; Goetzinger v. Donahue, 138 Wis. 103, 119 N. W. 823.

On the other hand, it is equally well settled that there are duties, the performance of which may not be indefinitely delegated to outsiders. State ex rel. Ross v. Anderson, 31 Ind. App. 34, 67 N. E. 207; Shaw v. Bankers', etc., Ins. Co., 61 Ind. App. 346, 112 N. E. 16; West v. Camden, 135 U. S. 507, 10 S. Ct. 838, 34 L. Ed. 254; Anglo-American Land, etc., Co. v. Lombard (C. C. A.) 132 F. 721, 736.

The case of Jones v. Williams, 139 Mo. 1, 39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 Am. St. Rep. 436, is as strong as any that appellant has cited, and illustrates, perhaps as well as any, the extent to which the courts have gone in upholding such delegations of authority. Here the Board of Directors gave an outsider the position of editor and manager of a large daily paper for a period of five years, during which time said outsider was to determine the editorial policy of the paper. But the facts in that case fall short of those presented in the instant suit. The period of control there fixed was five years.

Here it is twenty years. There a large part of the board's official duties was undelegated. Here nothing of importance was left for the board of directors but the unimportant, the ministerial duties.

It is true the statutes of most of the states authorizing the organization of corporations are of general application and are easily complied with. Yet we cannot believe that the requirements therein found or the official duties therein prescribed are mere formalities or only directory in character. This is particularly true of insurance companies upon whose conservative management and financial responsibility a multitude of policy holders are dependent. The grant of corporate power by a state is upon the hypothesis that these powers shall be exercised by the corporation's officers, annually elected, by the stockholders and not by the officers of another corporation. Anglo-American Land, etc., Co. v. Lombard, supra.

Reverting to the language of this agreement for a moment, it appears "that for and during the period of twenty years from the date hereof it" (appellant) "will supply * * * *the underwriting and executive management* * * * in the person of its president, Frank H. Ellis, or such other officer as it may from time to time designate," and that "during said twenty-year period" the casualty company shall elect the officer furnished by appellant for its underwriting manager who "shall have general supervision and charge of the underwriting affairs of the corporation."

Such an agreement negatives the thought that appellant was merely the soliciting agent of the casualty company. It contemplated the substitution of appellant for the officers of the casualty company. What was the casualty company's business? To write casualty insurance and adjust the losses growing out of such insurance. If there existed a conflict of opinion between the board and appellant, whose voice under this contract would control? Obviously, appellant's. The length of time during which the agreement was to operate likewise indicated that not only managerial powers were delegated, but the entire policy of the casualty company business was to be fixed and determined by appellant. No other conclusion can be drawn from this agreement and the evidence than that the casualty company was to be merely an instrumentality through which appellant was to conduct a casualty insurance business in the state of Indiana. The agreement which accomplished this result transcends the spirit and theory upon which corporate franchises are based, and is void.

█ Estoppel. Appellant contends that, even though the contract be void, the casualty company is estopped to assert such invalidity. Little need be said respecting this contention. The law is clear, we think, that a corporation which makes a contract void because the corporation making it was without authority so to do, because against public policy, is never estopped to assert its invalidity. The reason for its invalidity was known to both parties when the contract was executed. 7 R. C. L. 530; Board, etc., v. Lafayette Railroad Co., 50 Ind. 112; Central Transportation Co. v. Pullman's Car Co., 139 U. S. 24, 59, 60, 11 S. Ct. 478, 35 L. Ed. 55.

█ Recovery Under Void Contract. Courts have very generally striven to do justice between the parties by permitting property or money parted with, or services rendered on the faith of such unlawful contracts, to be recovered or compensated for, notwithstanding the invalidity of the contract. Central Transportation Co. v. Pullman Car Co., supra; Thomas v. Brownville, etc., Railroad Co., 109 U. S. 522, 3 S. Ct. 315, 27 L. Ed. 1018; Citizens' Cent. National Bank v. Appleton, 216 U. S. 196, 30 S. Ct. 364, 54 L. Ed. 443; Bicknell v. Widner School Township, 73 Ind. 501.

The master recognized this rule, and allowed some five or six items that aggregated $11,224.94. Appellant contends, however, that to this sum should have been added eight other items.

█ Item 1 is a claim of $200,000 which represents the asserted value of the business transferred to the casualty company by reason of the void agreement. The annual earned premiums of the reciprocal company for four and one-half years preceding the transfer to the casualty company were $376,-000. Using the annual earned premiums as the basis of their estimation, witnesses testified that the business was worth $200,000.

The master disposed of this contention by finding that such business belonged to the reciprocal association rather than to appellant. "That appellant had no proprietary interest therein and no right to sell said property, assets and business as a going concern * * * that * * * the condition of the Reciprocal Association was such that the transfer of its business and assets subject to its liabilities was not of substantial value to appellant."

These findings are sustained by the evidence. It therefore follows that appellant is not entitled to recover this item or any part thereof.

■ The second item deals with the so-called "$25,000 surplus note." This amount was advanced by appellant when the casualty company was organized. Before the casualty company could obtain a license to do business in Indiana, it was required to have $25,000 in its treasury. Appellant advanced this money on the expectation that it would be repaid through the operation of the casualty company's business.

. To evidence the indebtedness and its terms, appellant took a note which reads as follows:

"Surplus Note of the Indiana Company
"Amount
"No. 589 $25,000.00
"Indianapolis Ind. February 1, 1922

"For value received, The Indiana Company, upon demand agrees to pay, *but only out of said Company's surplus earnings*, to Sherman & Ellis, (payee) provided said payee be not in arrears to said Company, the sum of twenty-five Thousand Dollars, together with interest thereon at the rate of six per cent per annum. (executed by Indiana Company.)"

Appellees argue that appellant, having accepted the note which expressly provided for its payment "only out of said company's surplus earnings," is, as against creditors, at least, required to look to the "surplus earnings" for payment of this note, and, there being no earnings, surplus or otherwise, appellant is without recourse.

If this were a suit between two companies only, and no creditor's rights intervened, appellant's contention would be more persuasive. Even then the court would be confronted by a record which fails to show the money was loaned and the note taken in consideration of the execution of the void agreement. But we can set this objection to one side and place our conclusion on the ground that the controversy is really between the creditors of the casualty company on one side and appellant on the other. This money was advanced to comply with the Indiana statutes respecting the organization of corporations such as the casualty company. The $25,000 was to secure policyholders and creditors. To permit appellant to withdraw this money because perchance an agreement it obtained from the casualty company was void, would be to ignore the innocent third parties for whose benefit and to secure whose claims the money was turned over to the casualty company.

■ Item 3. Under the laws of Indiana a surplus of $100,000 was required before the company could issue policies without contingent liability. The predecessor company had outstanding liability claims, the exact amount of which were not known. The insurance department, however, made an estimate of this sum which exceeded the estimate of appellant. The latter then paid into the treasury of the casualty company a sum sufficient to cover the estimate as made by the insurance department. Subsequently, when the losses were all paid, the department estimate was found to have exceeded by $5,013.56 the amount actually required to meet these losses. This claim should be allowed appellant. Its payment was in the first instance in the nature of an advancement to meet unliquidated claims. When these claims were all paid, the unused amount should have been returned to appellant. Interest at 5 per cent. from February 24, 1922 must also be allowed on this item.

■ Item 4. When the predecessor company transferred its assets to the casualty company, an item of $2,158.64 was carried as interest due on overdue accounts. To meet the demands of the insurance department appellant paid this sum into the treasury of the casualty company. It was never repaid. It does not appear that the amount was ever collected, and therefore we are unable to find any basis for its allowance.

Item 5. A larger item is that of $25,695.61, which represents the amount of commissions due appellant from the predecessor company. Appellant relinquished its claim for this sum in order to reduce the liabilities of the predecessor company and to enable the casualty company to show the necessary $100,000 surplus. The same reasons advanced for the disallowance of item 2 apply to this claim and necessitates its disallowance.

We have examined items 6, 7, and 8, and, without stating our reasons in detail, in view of the discussion respecting the foregoing items, we express our accord with the district court that they should be disallowed.

The master set forth in detail the reasons for their disallowance. The evidence sustains the master's findings.

The decree is modified by inserting the sum of $16,238.50 in place of $11,224.94. To this sum interest should be added from February 24, 1922 at 5 per cent. As thus modified, the decree is affirmed. The costs in this court will be borne equally.