## VIRGINIA DARE TRANSP. CO., Inc. v. NORFOLK SOUTHERN BUS CORPORATION.

### No. 5903.

United States Court of Appeals
Fourth Circuit.

Argued July 5, 1949.

Decided Aug. 4, 1949.

J. C. B. Ehringhaus and J. C. B. Ehringhaus, Jr., Raleigh, N. C., for appellants.

J. Kenyon Wilson, Elizabeth City, N. C., and James G. Martin, Asheville, N. C. (Arthur J. Winder, Norfolk, Va., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

Transactions between Virginia Dare Transportation Company and Norfolk Southern Bus Corporation, carriers of freight by motor truck, have led to two law suits with respect to the operation of a route between Norfolk, Virginia, and Manteo, North Carolina, with a branch extending westerly from Sligo, North Carolina, an intermediate point, to Elizabeth City, North Carolina. The parties entered into a contract on June 6, 1940, with respect to the exercise of franchises, issued or to be issued to them by the Interstate Commerce Commission, for the route in question, whereby it was agreed that Virginia Dare would restrict its operations in certain particulars and Norfolk Southern would furnish certain facilities and services for general joint use, free of charge. The contract was carried out until December 31, 1944 when Norfolk Southern denounced it as illegal and brought suit in the Eastern District of Virginia against Virginia Dare for the value of the services rendered in the sum of $30,000, and Virginia Dare on its part filed a counterclaim for breach of contract and secured a judgment of $60,-000. This judgment was reversed by us in Norfolk Southern Bus Corp. v. Virginia Dare Transportation Co., 4 Cir., 159 F.2d 306, where we held that the contract was illegal in that it restricted competition and had not been approved by the Interstate Commerce Commission, and, the parties being in pari delicto, neither could recover from the other.

When this decision was rendered, the present suit was pending in the Eastern District of North Carolina. It had been brought by Virginia Dare for the same breach of contract which formed the basis of its counterclaim in the Virginia suit; but in addition Virginia Dare, in response to the plea that the contract was illegal and void, set up the alternative ground that it was inequitable to relieve Norfolk Southern from the obligations of the illegal contract and permit it to retain its benefits, and that Virginia Dare was entitled to be restored to the rights which it surrendered to Norfolk Southern by the agreement. This claim was rejected by the District Judge and is the subject of the present appeal.

It is admitted that the general rule is that a party cannot recover damages for breach of an illegal contract, nor can he recover the value of what he has given for the performance of the contract by rescinding it. But it is contended that this rule

has been qualified by the decisions so as to permit one party to recover the value of what he has given up if it would be inequitable to allow the other party to retain it, especially if the parties are not really in pari delicto. See Central Transportation Co. v. Pullman's Palace-Car. Co., 139 U.S. 24, 11 S.Ct. 478, 35 L.Ed. 55; Id., 171 U.S. 138, 18 S.Ct. 808, 43 L.Ed. 108; Thomas v. Brownville, Ft. K. & P. R. Co., 109 U.S. 522, 3 S.Ct. 315, 27 L.Ed. 1018; Citizens' Central National Bank v. Appleton, 216 U.S. 196, 30 S.Ct. 364, 54 L.Ed. 443; Goldstein v. Groesbeck, 2 Cir., 142 F.2d 422, 154 A.L.R. 1285; Sherman & Ellis v. Indiana Mutual Casualty Co., 7 Cir., 41 F.2d 588; Restatement of Contracts, §§ 598 to 609; Pomeroy, Equity Jurisprudence, 5th Ed., §§ 940–942. Assuming that the present case is within the class to which the qualification of the rule may be applied, it is necessary in order to decide the merits of the claim to restitution to describe the relations of the parties not only when the illegal contract of June 6, 1940 was entered into, but also when the negotiations between the parties began and neither had surrendered any right to the other.

In 1936, Virginia Dare possessed the right to operate busses for the carriage of property over the described route, and Norfolk Southern desired the right to operate a portion of the route from Norfolk to Elizabeth City via Sligo. Accordingly on September 12, 1936, the parties entered into a written contract whereby Virginia Dare sold this right to Norfolk Southern and agreed to give up its facilities at Norfolk and Elizabeth City to Norfolk Southern, and further agreed not to operate this portion of the road for ten years. Norfolk Southern on its part agreed to pay Virginia Dare $14,000 in installments upon approval of the sale by national and state regulatory bodies, and also agreed to operate two round trips per day between Norfolk and Elizabeth City to connect with the schedules of Virginia Dare on the route between Sligo and Manteo, which Virginia Dare retained. Norfolk Southern also agreed to establish a transfer point at Sligo with such warehouse facilities as might be required for the handling of interchange traffic at that point.

This agreement, except as to one provision not material here, was approved by the Interstate Commerce Commission on August 3, 1938, but was never put into effect. Both parties became interested in certain franchises for routes covering Norfolk, Elizabeth City and other points which were owned by Habit Brothers, a partnership. On or about August 1, 1938, Virginia Dare acquired an option to purchase the Habit franchise and when Habit refused to recognize the option, Virginia Dare pressed its claim in the state courts of North Carolina in litigation that was still going on in May, 1940. Norfolk Southern also desired to purchase certain of the Habit rights for itself, and on November 25, 1939, applied to the Interstate Commerce Commission for authority to make the purchase. About this time Virginia Dare demanded that Norfolk Southern comply with the agreement of September 12, 1936, but Norfolk Southern took the position that the contract had been abandoned and declined to comply.

When the transactions were in this situation, the three parties got together and entered into an agreement of purchase and settlement on May 23 and 24, 1940. Thereby Norfolk Southern and Virginia Dare rescinded their agreement of September 12, 1936, Virginia Dare agreed to dismiss its suit against Habit, and Norfolk Southern agreed to pay Virginia Dare $5,000 in installments when the Interstate Commerce Commission approved the transfer of the franchises from Habit to Norfolk Southern; and Norfolk Southern and Virginia Dare also agreed to establish through routes and joint rates with common terminal facilities at Norfolk and Elizabeth City, including pick-up and delivery service and interchange at Elizabeth City. Thus it will be seen that Norfolk Southern and Virginia Dare gave up the legal transfer of the route from Virgina Dare to Norfolk Southern under the agreement of September 12, 1936 that the Interstate Commerce Commission had approved, and each company retained the right to operate between Norfolk and Eliz-

abeth City. It was in order to control this situation that the parties arranged to restrict competition between them through the agreement of June 6, 1940 which we declared to be void in our previous decision.

The rights which Virginia Dare seeks to have restored to it now that the agreement of June 6, 1940 has been stricken down, are rights which Virginia Dare claims that it acquired under its agreement with Norfolk Southern on September 12, 1936. They are listed in three categories as follows:

(1) The right to receive $14,000 for the sale of the franchises for the route between Norfolk and Elizabeth City;

(2) The right to the establishment by Norfolk Southern of a warehouse at Sligo as a transfer point for freight between Virginia Dare and Norfolk Southern. This right, it contends, is worth $160,000;

(3) The right to enforce its option to purchase the Habit franchises which it values at $35,000.

An examination of these claims demonstrates at once that they are not supported by any substantial equity. It does not appear that Virginia Dare is any the worse off by reason of the avoidance of the agreement of 1940 and the failure of Norfolk Southern to carry out the agreement of September 12, 1936. The right of Virginia Dare to receive $14,000 for the route of Norfolk Southern was lost, but Virginia Dare regained the route and, we are told in argument, has since sold it for $20,000. The proposed warehouse at Sligo would have constituted a valuable facility if Virginia Dare had confined its business to the transportation of goods between Sligo and Manteo, but there was no need for such a warehouse at Sligo, a point of little commercial importance, when Virginia Dare's right to carry goods through to Norfolk and Elizabeth City was restored.

■ Finally it seems clear that Virginia Dare suffered no substantial loss when it gave up its right in 1940 to enforce its option to buy the Habit franchises. That right was at least of doubtful value since it was the subject of prolonged litigation which up to that time had not been successful; and there is little ground for the contention that the claim was worth more than the sum of $5,000 which Virginia Dare actually received from it under the 1940 agreements. We think that there was good ground for the final conclusion of the District Judge that there was no evidence to establish a basis for a legal determination of how much, if any, the value of the rights which Virginia Dare parted with as a consideration for the illegal contract exceeded the value of the consideration which it received thereunder.

■ We have thus reviewed the circumstances of the case in order to test the contention of Virginia Dare that it suffered substantial loss when the 1940 contract was avoided and the Norfolk Southern refused to carry out the agreement of 1936, and we have been unable to find that Virginia Dare sustained a substantial loss thereby. But in addition we think that the whole contention is based on an erroneous theory. It does not follow as a matter of course that the agreement of 1936 was reinstated when the agreement of 1940 was stricken down. Virginia Dare was in possession of rights under the prior valid agreement but voluntarily surrendered them and hence has lost its right to assert them. If the equities of the case should control and it should be held that Virginia Dare should be restored to its original position, that position is obviously the one which it occupied before it entered into any negotiations whatsoever with Norfolk Southern, namely, the position of owner of the franchises for the entire route first above described. That route was fully restored to it when the illegal agreement was annulled, and Virginia Dare has exercised full rights of ownership by selling the route to another purchaser. In our opinion Virginia Dare has secured full restoration of its original rights and there is no basis for its equitable claim.

Affirmed.