**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,
<u>Plaintiff-Appellant,</u>

v.

RABOTEAU T. WILDER, JR., Personal
Representative of the Estate of Blair
Michael Bycura; JEAN C. MCLEAR;

No. 97-1588

JOSEPH T. MCLEAR; ROBERT M.
MCLEAR, Co-Administrators of the
Estate of Jennifer C. McLear,
<u>Defendants-Appellees,</u>

and

NATIONSBANK, N.A.,
<u>Defendant.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Carl Horn, III, Chief Magistrate Judge.
(CA-96-4-3-H)

Argued: March 4, 1998

Decided: June 9, 1998

Before LUTTIG and MICHAEL, Circuit Judges, and
HILTON, Chief United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Rodney Allen Dean, DEAN & GIBSON, L.L.P., Charlotte, North Carolina, for Appellant. Frank Hilton Lancaster, ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina, for Appellees. **ON BRIEF:** D. Christopher Osborn, DEAN & GIBSON, L.L.P., Charlotte, North Carolina, for Appellant. Martin L. Brackett, Jr., ROBINSON, BRADSHAW & HINSON, P.A., Charlotte, North Carolina; J. Reid McGraw, Jr., Raboteau T. Wilder, Jr., ALALA, MULLEN, HOLLAND & COOPER, P.A., Gastonia, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Blair Bycura, M.D. and Jennifer McLear died in the crash of a private plane piloted by Bycura. At that time Bycura held a $1,000,000 flight insurance policy from North American Speciality Insurance Company (NAS). NAS filed a declaratory judgment action against the estates of Bycura and McLear seeking a determination that there was no coverage under the policy for any claims arising from the crash. NAS alleged that Bycura, in his application for insurance, misrepresented his medical condition by failing to indicate that his Federal Aviation Administration (FAA) medical certificate had a one-year expiration date rather than the usual two years. This failure, NAS argued, invalidated the insurance policy. The magistrate judge found that the application form did not make an unambiguous request that required disclosure of the one-year expiration date of Bycura's medical certificate. The judge therefore concluded that Bycura did not make a misrepresentation on the application form, and he granted summary judgment to the estates. Because we agree that the language of the request in the application is ambiguous, we affirm.

2

I.

Shortly after midnight on August 20, 1995, an airplane piloted by Bycura crashed on approach to the airport in Rock Hill, South Carolina, killing both Bycura and his passenger, McLear. The National Transportation Safety Board (NTSB) determined in its subsequent investigation that the crash did not result from mechanical failure. Rather, the NTSB concluded that Bycura had suffered a heart attack that incapacitated him and led to the fatal crash. Bycura's death certificate indicated that he died of massive bodily injuries from the crash, but it listed a heart attack as a contributing factor.

This was not Bycura's first heart attack. He had a history of heart problems dating back to 1978 that included two bypass surgeries in 1979 and 1986. Since 1988, however, Bycura's health had improved dramatically. By May 1990 Bycura had committed himself to a rigorous exercise regimen, running eight to ten miles a day at a pace of just over a six-minute mile. As a result, his doctor reported that he was in "exceptionally robust health" and suffered no symptoms of heart problems. Subsequent examinations in 1992, 1993, and 1994 affirmed that Bycura "remain[ed] in excellent general health . . . free of symptoms of [heart problems]."

In a letter dated September 10, 1990, the FAA informed Bycura that because of his prior heart condition he qualified for a third-class medical certificate (the lowest pilot classification) only if he met certain conditions prescribed by FAA regulations. Among these was the requirement that Bycura undergo annual medical examinations. Most pilots who receive a third-class medical certificate are required to undergo medical examinations only every two years. On Bycura's third-class medical certificate, dated March 29, 1993, there is a box marked "Limitations." In that box the following information was written: "not valid after 4-30-94" and "must wear glasses for near and distant vision."

On January 31, 1994, Bycura filled out an application for a $1,000,000 flight insurance policy from NAS. One question in this application asked whether Bycura had "[a]ny physical impairments or limitations or waivers on Medical Certificate[.]" Two boxes next to the question indicated that it was to be answered by checking boxes

3

marked "yes" or "no." Bycura checked the box marked "yes" and wrote in the margin, "[m]ust wear glasses." He did not volunteer the expiration date of his medical certificate. NAS issued a policy for the period January 17, 1994, to January 17, 1995. The policy was renewed in 1995 and was in effect at the time of the crash.

On January 4, 1996, NAS filed this declaratory judgment action in the Western District of North Carolina against the estates of Bycura and McLear, seeking to avoid coverage.[1]  With the consent of all parties, the case was referred to a magistrate judge. After cross-motions for summary judgment were filed, the magistrate judge granted summary judgment to the estates and denied it to NAS. NAS now appeals.

II.

A.

A district court's award of summary judgment is reviewed de novo on appeal. Facts and reasonable inferences must be taken in the light most favorable to the party opposing the motion. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

An insurance contract may be avoided by the insurer if it can show that the applicant made a material misrepresentation or omission on his application. See Prudential Ins. Co. v. Barden, 424 F.2d 1006, 1009-10 (4th Cir. 1970) (applying North Carolina law). To carry this burden, the insurer must demonstrate that it made a specific and unambiguous request for the information that was misrepresented or omitted. See, e.g., Nat'l Aviation Underwriters, Inc. v. Fisher, 386 F.2d 582, 584 (8th Cir. 1967) ("The general rule is that absent fraud an applicant's failure to disclose facts about which no questions were asked will not avoid the policy"). A provision of a contract is ambiguous if the words or effect of the provision are uncertain or capable of several reasonable interpretations. See Woods v. Nationwide Mut. Ins. Co., 246 S.E.2d 773, 777 (N.C. 1987). An ambiguous provision in an

_____

[1] Federal jurisdiction is based on diversity of citizenship. The parties agree that North Carolina law applies.

4

insurance contract is to be construed in favor of coverage for the insured. See Brown v. Lumbermens Mut. Cas. Co. , 390 S.E.2d 150, 153 (N.C. 1990); Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174 (1923). This canon of interpretation also applies to ambiguities in applications for insurance. See Union Indemnity Co. v. Dodd, 21 F.2d 706, 710-11 (4th Cir. 1927). If no genuine issue of material fact remains after any ambiguity is construed in favor of coverage, summary judgment may be granted to the insured. See, e.g., Miller v. Nationwide Mutual Ins. Co., 486 S.E.2d 246 (N.C. Ct. App. 1997) (affirming summary judgment for insureds when damage to their home was caused by an incident which could be interpreted as an "accident," and the insurance contract was ambiguous because it did not define the term); Hartford Fire Ins. Co. v. Pierce, 489 S.E.2d 179 (N.C. Ct. App. 1997) (reversing trial court with direction to grant summary judgment to insured because liberal reading of ambiguous insurance contract resulted in coverage).

B.

In this case, the NAS application form asked for a yes or no answer to the following question: "Any physical impairments or limitations or waivers on Medical Certificate?" NAS contends that this language was a specific and unambiguous request for the expiration date of the medical certificate. NAS argues that had Bycura written the expiration date on his application form, it would have discovered his history of heart disease and restricted or denied coverage. [2] The question on the application does not ask specifically for the expiration date. NAS nevertheless contends that the question indicates unambiguously that NAS wanted the expiration date. While NAS's interpretation of the question may be a reasonable one, it is by no means the only reasonable interpretation.

The question asks for "physical impairments or limitations or waivers" on the medical certificate. The question is ambiguous because it

_____

[2] NAS admits that it did not directly request information about Bycura's health. NAS further admits that Bycura was under no obligation to reveal his medical history, with the exception (NAS alleges) that he should have listed the expiration date of his medical certificate in response to the question. See Appellant's Br. at 17-18.

5

is unclear whether the word "physical" applies just to impairments or to limitations as well. This ambiguity is important because if the word "physical" also modifies limitations, then Bycura could have answered the question correctly by listing any <u>physical</u> limitations. Since an expiration date is not a physical limitation, the only physical limitation on Bycura's medical certificate was that he had to wear glasses. That is exactly how Bycura answered the question. We believe that the term "limitations" could reasonably be interpreted to mean only physical limitations listed on the certificate. As a result, the question did not unambiguously ask for the expiration date on Bycura's medical certificate.

A reading of the application as a whole lends further support to the argument that the question at issue here is ambiguous. The application asked for several specific dates, such as the date of the applicant's biennial flight review. It also requested specific information about the medical certificate, such as the date of the last physical and the class of the certificate. In contrast to these specific requests for other information, the form did not directly ask for the expiration date of the medical certificate. Because the form asked specifically for other dates and asked for certain specific information about the medical certificate, Bycura could have reasonably understood that NAS was not seeking the expiration date of the certificate.

In sum, it is a reasonable interpretation that the question on the application form only asked for physical limitations on the medical certificate. Because insurance applications must be construed in favor of coverage, we adopt this interpretation and conclude that Bycura's answer was accurate. NAS does not allege any other misrepresentation. As a result, there is no genuine issue of material fact that would preclude the award of summary judgment to the estates of Bycura and McLear.**3**

The judgment of the district court is

<u>AFFIRMED</u>.

_____

**3** NAS also argues that the magistrate judge improperly struck portions of affidavits submitted by Donald Barker, chief underwriter for NAS. Because we affirm on grounds not relating to the stricken portions of the affidavits, we need not reach this issue.

6