## SCHMITT v. RECONSTRUCTION FINANCE CORPORATION.
### No. H–78.

District Court, D. Nevada.
June 10, 1936.

Platt & Sinai, of Reno, Nev., for plaintiff.

Brobeck, Phleger & Harrison, of San Francisco, Cal., and Ayres, Gardiner & Pike, of Reno, Nev., for defendant.

NORCROSS, District Judge.

A number of questions are involved in this case, mainly growing out of the validity of certain subordination agreements entered into by the various state banks, of which plaintiff Schmitt is receiver. At the time of the trial it appeared that the subordination agreements as alleged in the complaint, in so far as they applied to the Bank of Nevada Savings & Trust Company and the Virginia City Bank, were not produced. The question was then for the first time raised as to whether such subordination agreements were ever executed and delivered to the defendant corporation. Without at this time reviewing all of the evidence thereon, it is the opinion of the court that the evidence is sufficient to establish the execution and delivery of such subordination agreements, both as to the Bank of Nevada Savings & Trust Company and the Virginia City Bank.

Two serious questions have been raised with respect to the validity of such agreements; one deals with the question as to whether they were ever lawfully executed by the respective banks. It appears from the evidence that there was no meeting of the board of directors of any of the banks authorizing such issuance. The question is then presented respecting the power of the officers who did execute the same. In the view the court takes with respect to the other question which has been the main contention in the case, it will be unnecessary to pass upon this question of official power.

It appears from the evidence that all of the several banks involved are a part of what is referred to in the briefs as the Wingfield chain of banks. It appears from the record that the president and vice-president of the Reno National Bank were respectively president and vice-president of all of the other banks of the said chain, including all of the banks referred to in the complaint. It also appears from the evidence that the board of directors of all of the banks mentioned in the complaint were the same, or at least a majority thereof were members of the board of directors of the Reno National Bank. The rule is well settled that, where two or more corporations are controlled by the same or substantially the same board of directors, in transactions between such corporations so dominated, in order for the same to be enforceable against a corporation a party to any such agreement, it must appear that the agreement is advantageous to the corporation against whom such agreement or obligation is sought to be enforced.

In the case of Geddes v. Anaconda Mining Co., 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425, the Supreme Court said: "The relation of directors to corporations is of such a fiduciary nature that transactions between boards having common members are regarded as jealously by the law as are personal dealings between a director and his corporation, and where the fairness of such transactions is challenged the burden is upon those who would maintain them to show their entire fairness and where a sale is involved the full adequacy of the consideration. Especially is this true where a common director is dominating in in-

fluence or in character. This court has been consistently emphatic in the application of this rule, which, it has declared, is founded in soundest morality, and we now add in the soundest business policy. Twin-Lick Oil Co. v. Marbury, 91 U.S. 587, 588, 23 L.Ed. 328; Thomas v. Brownville, Ft. Kearney & Pacific R. Co., 109 U.S. 522, 3 S.Ct. 315, 27 L.Ed. 1018; Wardell v. Railroad Co., 103 U.S. 651, 658, 26 L. Ed. 509; Corsicana National Bank v. Johnson, 251 U.S. 68, 90, 40 S.Ct. 82, 91, 64 L.Ed. 141."

The Geddes Case, supra, was on appeal from the Ninth Circuit Court of Appeals, and, while the decision of the latter court (245 F. 225) was reversed, there was no substantial disagreement respecting the rule applicable in cases of interlocking directors. See (C.C.A.) 245 F. 225, at page 235. See, also, opinions in same case by Hunt, Circuit Judge, sitting as trial judge (D.C.) 197 F. 860, 864, and Bourquin, District Judge (D.C.) 222 F. 129, 133. See, also, Idaho-Oregon Light & P. Co. v. State Bank of Chicago (C.C.A.) 224 F. 39; 14A C.J. 125.

■ The principal question to be determined in the case is the question last mentioned. The court has reached the conclusion that the state banks, assuming they entered into what otherwise would be valid subordination agreements, that such agreements are not binding upon the state banks for the reason it appears from the evidence that the banks were not benefited thereby. It is apparent that the loan in question made by the Reconstruction Finance Corporation was one designed to aid the Reno National Bank in particular to continue business as a banking concern. It is also apparent from the evidence that the other banks would in all probability be benefited by such continuance. However, as subsequently developed, the loan was insufficient, or for other reasons the bank eventually had to suspend, was adjudged insolvent, and taken over by the Controller of the Currency as an insolvent bank. There was nothing to support a consideration or advantage upon the part of the state banks entering into such subordination agreements except the hope or belief that the aid to be extended by the defendant would be sufficient to carry on the Reno National Bank, and which, as the main bank in the said chain, would have enabled the other banks also to carry on. However, in so far as the facts appear in this case, no advantage whatsoever was derived by the several state banks entering into the subordination agreements. The mere hope of a different situation would not be sufficient to support a consideration for such an agreement. It is therefore the conclusion of the court that this case in the main comes within the rule heretofore announced that, where two or more corporations are controlled by interlocking boards of directors, any agreement or obligation between such corporations, to be binding and enforceable, must show a supporting advantage, otherwise the agreement is void.

■ It is the conclusion of the court that the subordination agreements referred to in the complaint are not binding upon the several state banks, and hence not binding upon the receiver thereof. This question becomes of importance because of the allegations in the complaint that certain loans aggregating very substantial amounts of money, made particularly to various corporations and individuals engaged in the live stock industry of the state, had been split and assigned in part to various of the state banks. When the Reno National Bank negotiated its loan or loans from the Reconstruction Finance Corporation it assigned as security the mortgages securing these several notes, together with such notes as were then retained by the Reno National Bank. The question here involved is whether the receiver now holding certain of the notes so secured has a right to have the defendant, Reconstruction Finance Corporation, account for such portion of the proceeds of sales of property covered by the various mortgages or other securities as is represented by the notes held by the receiver. It is the conclusion of the court that the receiver has a right to have such an accounting. That is, that where property has been sold ·by the defendant corporation, the proceeds of any such sale of mortgaged or otherwise incumbered property are subject to apportionment to the receiver of the several state banks as the amount of notes held by him as such receiver bear to the total secured by the mortgage.

■ While this view covers the main question presented, there remains a question applicable alike to the seventh and eighth causes of action. In the seventh cause of action it appears that the Jenkins Land & Live Stock Company, which had executed notes and mortgages covering a

very substantial amount of money, made prior to March 19, 1932, the date of a subordination agreement entered into by the Reno National Bank in favor of the Reconstruction Finance Corporation, and hence prior to April 13, 1932, the date the Jenkins Land & Live Stock Company mortgage was assigned to the Reconstruction Finance Corporation as security for its main loan, and that on May 24, 1932, an additional loan in the sum of $9,000 was made to the Jenkins Land & Live Stock Company by the Reno National Bank, and that the note therefor was by it assigned to the Virginia City Bank. On July 12, 1932, the same company, Jenkins Land & Live Stock Company, executed another note for $9,000 to the Reno National Bank, which in turn was assigned to the Tonopah Banking Corporation. It appears that these two notes were made and assigned subsequent to the assignment of the main mortgage to the Reconstruction Finance Corporation, and subsequent to the subordination agreement executed by the Reno National Bank to the Reconstruction Finance Corporation. It is manifest that the state banks, taking these assignments subsequent to the main assignment to the Reconstruction Finance Corporation, took subject to the rights of the Reno National Bank, and could obtain no greater right than that of the Reno National Bank. It is therefore the conclusion of the court that plaintiff is not entitled to recover upon the seventh cause of action.

The eighth cause of action presents precisely the same question of law referred to respecting the seventh cause of action. It also deals with subsequent loans made by the Reno National Bank to the John G. Taylor Company, one dated June 21, 1932, for $9,000, assigned to the Virginia City Bank, another dated July 9, 1932, for $7,500, assigned to the Tonopah Bank, and another note of August 6, 1932, for $7,500, assigned to the Carson Valley Bank. As before stated, these several notes are all subsequent to the main assignment by the Reno National Bank to the Reconstruction Finance Corporation, and hence the assignee banks acquire no rights superior to those of the Reno National Bank, and are governed by the subordination agreement of the Reno National Bank of date March 19, 1932. Plaintiff is not entitled to recover upon the eighth cause of action. The first and ninth causes of action

have heretofore been dismissed by consent of the respective parties.

In the other causes of action remaining there are a few instances of assignments of notes to the various banks which come within the rule as announced with respect to the seventh and eighth causes of action. Where there are such assignments following the so-called main assignment by the Reno National Bank to the Reconstruction Finance Corporation, plaintiff will not be entitled to an accounting thereon, but, upon all other notes mentioned, from the second to the sixth causes of action, inclusive, plaintiff is entitled to a decree for an accounting of such proportion of the receipts by the defendant corporation from foreclosure or other proceedings in respect to the mortgages and securities therein referred to as may appear. Let decree be entered accordingly. It is so ordered.