## RECONSTRUCTION FINANCE CORPORATION v. SCHMITT.
### No. H-117.

District Court, D. Nevada.
Oct. 1, 1937.

Wilson -McCarthy, of Oakland, Cal., Brobeck, Phleger & Harrison, of San Francisco, Cal., and N. J. Barry, of Reno, Nev., for plaintiff.

Platt & Sinai, of Reno, Nev., for defendant.

NORCROSS, District Judge.

This is a suit in equity to enjoin the sale of certain corporate stock in certain corporations and to obtain a declaration of the relative rights of plaintiff and defendant therein. The corporations were organized under the laws of the state of Nevada and are named as follows: Union Canal Ditch Company, Old Channel Ditch Company, Young Ditch Company, and Humboldt Lovelock Irrigation Light & Power Company.

The testimony and evidence submitted establishes the following facts:

On and prior to June 9, 1930, John G. Taylor was the owner of certain irrigated lands in Lovelock valley, particularly described in the bill of complaint. For many years prior to 1930 water for the irrigation of these lands had been and still is obtained from two sources; directly from the natural flow of the Humboldt river, and from flood waters stored in the so-called Pitt-Taylor reservoir, which was and is owned by the Humboldt Lovelock Irrigation Light & Power Company. The water is conveyed from these sources to the lands by means of the Young ditch, the Old Channel ditch, and the Union canal, and certain other ditches. The ditches named have long been owned by incorporated ditch companies, namely the Young Ditch Company, the Old Channel Ditch Company, and the Union Canal Company, the sole stockholders of which have always been owners of land lying adjacent to the ditches. Taylor owned 1,121⅓ shares of the capital stock of the Old Channel Ditch Company, 2,857 shares of the capital stock of the Young Ditch Company, and 150 shares of the capital stock of the Union Canal Company. On June 9, 1930, John G. Taylor conveyed to John G. Taylor, Inc., all of his property, real, personal, and mixed (excepting only property located in the corporate limits of the city of Lovelock), together with "all water rights, ditches and canals appurtenant to said land or used in connection therewith, and all shares of stock of any water corporation appurtenant to said land or the waters from which are used or have been used in connection with the irrigation or cultivation thereof." Water from the ditches and reservoir above mentioned had been applied to the beneficial use of the lands described in the bill of complaint long prior to the date of said deed. On April 17, 1932, John G. Taylor, Inc., as security for the payment of a promissory note in the principal amount of $700,000 mortgaged to the Reno National Bank all of the real property which it then owned or should thereafter acquire, "together with all water rights, water applications, water permits or privileges connected with, belonging, appurtenant or incident to the lands covered by said mortgage or used in connection with all or any part of said premises, or usable in connection therewith, and all dams, reservoirs and ditches, canals and other works for the storage or carrying of water then owned or thereafter acquired by the mortgagor or in which the mortgagor then had or might thereafter acquire any interest, and all applications then pending in the office of the State Engineer of the State of Nevada for any or all water to be used upon any part or portion of said lands or used in connection therewith." Immediately after the execution of this mortgage, the Reno National Bank pledged it and the note which it secured to the Reconstruction Finance Corporation, as security for a loan. A day or two after the Reconstruction Finance Corporation had made to the Reno

National Bank a loan in excess of $1,000,000 for the payment of which the Taylor mortgage was pledged as security, the Bank of Nevada Savings & Trust Company obtained from John G. Taylor a pledge agreement purporting to give to the Bank of Nevada Savings & Trust Company a lien upon the stock involved in this litigation as security for the payment of all existing of future indebtedness of John G. Taylor. At the time of the execution of the agreement neither John G. Taylor, Inc., nor John G. Taylor was indebted to the Bank of Nevada Savings & Trust Company, nor did either become indebted to that bank until some time later. A month or two after the delivery of the agreement the Bank of Nevada Savings & Trust Company lent to John G. Taylor, Inc., a total of $32,500 and took from John G. Taylor, Inc., three promissory notes for the total amount mentioned. These notes were endorsed by John G. Taylor, individually.

The several ditch companies (namely, the Young Ditch Company, the Old Channel Ditch Company, and the Union Canal Company) never have been operated for profit. Their functions in practice have at all times been and now are limited to the maintenance and operation of the ditches which they respectively own. Whatever revenue they have required has been obtained by assessments levied upon their shareholders. By virtue of the shareholdings the stockholders of each of the companies are entitled to ratable shares of the carrying capacities of the respective ditches proportionate to the number of shares which they hold.

By state court decree adjudicating relative rights of appropriators of water from the Humboldt river, the right to the use of water carried through the several ditches above referred to are adjudged to be appurtenant to the place of use. None of the ditch companies are adjudged to have any water rights, with the exception of the Union Canal Company, and as to this company its water rights are adjudged to be appurtenant to certain specifically described lands which are owned by shareholders of the company, but which are not involved in this litigation. The lands referred to in the bill of complaint are adjudged to have certain rights of appropriation of water from the Humboldt river, but these rights are of such late priority that, unless water for the irriga-

tion of the lands can be obtained from the Pitt-Taylor reservoir, the lands, except in years of exceptional precipitation, are semiarid and practically without value. In other words, water from the Pitt-Taylor reservoir is absolutely essential to the profitable operation of the lands.

The Pitt-Taylor reservoir was and is owned by the Humboldt Lovelock Irrigation Light & Power Company, which in turn is possessed of the right to store certain quantities of water taken from the Humboldt river for use on certain designated lands, including, among other lands, the property referred to in the bill of complaint. These rights are evidenced by certificates No. 2130 and No. 2131. The said certificates contain the following provision: "The stored waters as granted by this certificate are to be used only to supply any deficiency in the irrigation of vested right, lands herein listed as irrigated by direct diversion from the Humboldt River, and in no event shall such combined use exceed any duty of water decreed to such lands."

All of the right, title, and interest of the Reconstruction Finance Corporation, the Reno National Bank, and John G. Taylor, Inc., in and to the stock through foreclosure of the mortgage executed in favor of the Reno National Bank and mesne conveyances, has passed to and become vested in Pacific States Savings & Loan Company, which has been substituted as plaintiff in this proceeding, and the question presented for the court's decision is whether the defendant has any lien upon the stock superior to the title of the plaintiff. On the basis of the pledge agreement, coupled with possession of the certificates evidencing the shares, defendant, as receiver of the Bank of Nevada Savings & Trust Company, asserts a lien upon the stock as security for Taylor's indorsement of the three notes mentioned and that such stock represents ownership of all the water rights in respect to the land described in the said mortgage.

Shortly prior to the time of the final submission of this case, this court in another case had occasion to determine the main question of law herein involved. In the case of United States v. Humboldt Lovelock Irrigation Light & Power Company, 19 F.Supp. 489, there was presented the question whether the United States was the owner of certain water rights in the Humboldt river for which it had

paid the then upstream owners $419,000, for the purpose of changing the point of diversion downstream for use upon lands owned by others within a government reclamation project, the Pershing County Water Conservation District. The United States in that case, like the ditch and reservoir companies in this case, was not the owner of any land irrigated or to be irrigated by the water the ownership of which was or is in question. Relative to the law governing that question this court in the opinion rendered in that case, 19 F.Supp. 489, at page 491, said: "The law is well settled in this state (Prosole v. Steamboat Canal Co., 37 Nev. 154, 140 P. 720, 144 P. 744) and in the states of the arid region generally, that water for irrigation is appurtenant to the lands irrigated and hence the property of the owner of the land so irrigated. Ickes v. Fox, 66 App.D.C. 128, 85 F.(2d) 294, 298."

When John G. Taylor transferred his land holdings to John G. Taylor, Inc., the land transfer carried with it all water rights appurtenant thereto, irrespective of any other expressions in the deed of transfer. Such water rights, so appurtenant, include means of transportation through the ditches constructed for delivery of the same. It also included a right to the water stored in the so called Pitt-Taylor reservoir for the use of such land because the same would become appurtenant thereto. Rights to water for irrigation of arid lands within this state is wholly distinct from rights which may be evidenced by corporation stock certificates. A corporation, except in the case of a water supply for municipal purposes, may not acquire a title to water for irrigation except in cases where such corporation is also the owner of land upon which such water is so used and so becomes appurtenant thereto. A corporation like the Steamboat Canal Company, referred to in the citation supra, may acquire rights to charge and collect for supplying a means of transportation from the point of diversion to the place of use but, as in that case held, the water so used becomes appurtenant to the land to which it is applied and the right to delivery of the water to the land is only subject to a conveyance charge.

None of the corporations, the stock in which is here involved, appears to be the owner of irrigated lands. Such stock, therefore, does not present any element of interest in rights to water as such, particularly is this the case of the several ditch companies. It does not follow however, that because said ditch companies and said Humboldt Lovelock Irrigation Light & Power Company may have no water rights such as is appurtenant to land owned by said companies, that the stock therein may not represent some other, more or less, valuable rights.

A reference to the articles of incorporation of the several companies do not disclose that they were organized for the sole or primary purpose of supplying water for irrigation of any particular land. In the case of the Humboldt Lovelock Light & Power Company, as indicated by its name, it was incorporated for other purposes in addition to that of storing and transporting water for irrigation. Stock therein might necessarily have a value for reasons wholly distinct from the matter of supplying water for irrigation of lands which, by its charter, is not confined to any definite tracts.

Counsel for defendant, receiver, calls the court's attention to the Nevada statutes relating to corporations organized under the laws of this state providing that "shares of stock in every corporation shall be personal property and shall be transferable on the books of the corporation, in such manner and under such regulations as may be provided in the by-laws." Nevada Compiled Laws, §§ 1617, 1722. The by-laws of each of the said corporations, the stock of which is here involved, makes provisions for such transfer.

Attention is also so directed to the state statute requiring a mortgage of personal property to have "appended or annexed thereto the affidavits of the mortgagor and mortgagee, * * * setting forth that said mortgage is made in good faith." In the absence of such affidavit it is provided that the mortgage "is void as against creditors of the mortgagor and subsequent purchasers or incumbrancers of the mortgaged property in good faith and for value." Nevada Compiled Laws, § 987. The mortgage to the Reno National Bank did not have appended such affidavits.

A considerable portion of the brief for defendant, receiver, is devoted to a contention that the equities in this case are in favor of defendant and for that reason plaintiff is not entitled to any relief. This contention is based primarily upon the fact

that the officers and directors of the Reno National Bank and the Bank of Nevada Savings & Trust Company were the same personnel and that the said loans made by the two banks respectively were handled mainly by the same official. The opinion and decision of this court in Schmitt, Receiver v. Reconstruction Finance Corporation, 20 F.Supp. 813, dealing with the question of subordination agreements entered into between a number of state banks and the Reno National Bank, all having in whole or in the main a common directorate, is cited in support of the contention. Without determining whether there may or may not be equities also growing out of the facts involved in this case, it is sufficient now to say that the rights of the parties to this proceeding are controlled by rules and provisions of law wholly independent of equitable principles controlling upon the facts presented in the case last referred to. As heretofore stated, it is settled law that water diverted from a natural water channel for irrigation of arid land becomes appurtenant to the land and is subject to any mortgage of such land and passes with any conveyance thereof. As water for the reclamation of arid lands by means of irrigation may not be supplied thereto without the aid of ditches or canals for that purpose, and, in some cases, also, the use of storage reservoirs, the right to the water carries with it rights in the means of delivery thereto. Such rights, as before stated, may be subject to conditions such as maintenance costs and other proper charges, not necessary or possible here to fully consider and determine.

Plaintiff is entitled to a decree as against defendant, receiver, to the effect that plaintiff, as owner of the land described in the bill of complaint, is owner of the water for irrigation thereof as appurtenant to said land and also owner of rights in said ditches as means of transportation and of storage rights in said reservoir, subject to maintenance charges. Whether any such transportation or storage rights may or may not be subject to any other charge is not herein involved.

Plaintiff is not entitled to decree respecting the stock or certificates therefor, referred to in the pleadings, otherwise than as such stock or certificates thereof may be affected by the decree to which plaintiff is entitled as above indicated.

The plaintiff is granted a decree accordingly. Each of the parties will pay their own costs of suit.